No. 22-11731-E

_____

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE ELEVENTH CIRCUIT

_____


UNITED STATES OF AMERICA,
Appellee.


-vs-


ROBERT DUNN,
Appellant,


Appeal from the United States District Court
For the Southern District of Florida


No. 9:20-cr-80085-RKA-1

_____

## APPELLANT'S INITIAL BRIEF


_____

/s/Edward J. O'Donnell, IV

Edward J. O'Donnell, IV

8101 Biscayne Blvd.

Suite 311

Miami, FL 33138

Florida Bar #111661

(305) 573 -1000

(305) 573-9304 facsimile

info@odonnellfirm.com

eod@odonnellfirm.com

Counsel for Appellant

**United States v. Robert Dunn, 22-11731-E**

**<u>Certificate of Interested Persons and Corporate Disclosure Statement</u>**

Undersigned counsel for Robert Dunn hereby certifies that the following is a complete list of persons and entities who have an interest in the outcome of this case:

1. Altman, Hon. Roy K., United States District Judge;

2. Birch, Peter, Asst. Federal Public Defender;

3. Brannon, Hon. Dave Lee, United States Magistrate Judge;

4. Brown, Richard O.I., Asst. United States Attorney;

5. Cannon, Hon. Aileen M., United States District Judge;

6. Cunill, Andrea S., Counsel for Appellant;

7. Dunn, Robert, Appellant;

8. Laserna, Peter A., Asst. United States Attorney;

9. Matthewman, Hon. William, United States Magistrate Judge;

10. McCrae, Caroline M., Former Counsel for Appellant;

11. McMichael, Adam, Asst. United States Attorney;

12. O'Donnell, Edward Joseph, Counsel for Appellant;

13. Osborne, Susan, Asst. United States Attorney;

14. Quintero JR., Frank, Former Counsel for Appellant;

15. Reinhart,  Hon. Bruce E., United States Magistrate Judge;

## **Certificate of Interested Persons and Corporate Disclosure Statement (cont.)**

16. Schiller, Gregory, Asst. United States Attorney;

17. Tonya Bagley

Counsel certifies that no publicly traded company or corporation has an interest in the outcome of this case or appeal.

## **Statement Regarding Oral Argument**

Robert Dunn respectfully requests oral argument to supplement this brief. The issues in this case are not adequately reflected by the record and oral argument would aid the Court in deciding this matter.

# **Table of Contents**

**Page:**

Certificate of Interested Persons……………………………………………C-1

Statement Regarding Oral Argument…………………………………….…i

Table of Citations………………………………………………………………iv

Statement of Subject Matter and Appellate Jurisdiction …………………………vii

Statement of the Issues………………………………………………………..1

Statement of the Case……………………………………………………1

Standard of Review………………………………………………………21

Summary of the Argument…………………………………………………..21

Argument and Citations to Authority…………………………………………..23

I.   The District Court Erred in Denying Defendant's Motion to Dismiss the Indictment With Prejudice. ………………………………………..23

    a.  The District Court's granting of the First Continuance was an Abuse of Discretion and It's Findings of Fact were Clearly Erroneous……24

    b.  The District Court Abused the Ends-Of-Justice Exceptions and Failed to Make Sufficient Ends-of-Justice Findings, as Required by the Speedy Trial Act to Properly Exclude Time………………………...33

    c.  The Speedy Trial Violation Warrants Dismissal of The Indictment With Prejudice……………………………………………………44

Conclusion ……………………………………………………………..48

Certificate of Compliance with Type Style and Volume…………………………48

Certificate of Compliance with Electronic Filing……………………………...48

Certificate of Service……………………………………………………………….49

## Table of Citations

**Case:**                                                                                                         **Page:**

*Barker v. Wingo*, 407 U.S. 514, 92 S. Ct. 2182, 33 L. Ed. 2d 101 (1972)……45, 47

*Elms v. United States*, 457 F. Supp. 3d 897 (D. Nev. 2020)…………………..30, 37

*Klopfer v. State of N.C.*, 386 U.S. 213, 224, 226, 87 S.Ct. 988, 18 L.Ed.2d 1 (1967)………………………………………………………………………………..24

*Mapp v. Ohio*, 367 U.S. 643, 81 S. Ct. 1684, 6 L. Ed. 2d 1081 (1961)…………..23

*Roman Cath. Diocese of Brooklyn v. Cuomo*, 141 S. Ct. 63, 208 L. Ed. 2d 206 (2020)……………………………………………………………………………..23

*\*United States v. Ammar*, 842 F.3d 1203 (11th Cir. 2016)……………..…21, 26, 42

*United States v. Godoy*, 821 F.2d 1498 (11th Cir. 1987)………………………....44

*\*United States v. Harris*, 460 F. Supp. 3d 973 (E.D. Cal. 2020)…………25, 30, 35

*United States v. Knight*, 562 F.3d 1314 (11th Cir. 2009)…………………………44

*\*United States v. Larson*, 627 F.3d 1198 (10th Cir. 2010)………..21, 26, 29, 35, 39

*United States v. Martin*, 742 F.2d 512 (9th Cir. 1984)……………………………35

*United States v. Mathurin*, 690 F.3d 1236 (11th Cir. 2012)………………27, 36, 44

*United States v. Olsen*, 467 F. Supp. 3d 892 (C.D. Cal. 2020)…………………...24

*United States v. Toombs*, 574 F.3d 1262 (10th Cir. 2009)………………………..27

*\*Zedner v. United States*, 547 U.S. 489, 126 S. Ct. 1976, 164 L. Ed. 2d 749 (2006)……………………………………………………………25, 34, 37, 39, 42, 43

## Table of Citations (cont.)

**Statutory and Other Authorities**                                    **Page:**

Grand juries carry on during pandemic, United States Courts,
https://www.uscourts.gov/news/2020/10/27/grand-juries-carry-during-pandemic
(last visited Aug 3, 2022)…………………………………………………………47

U.S. Const. amend. VI……………………………………………………………24

18 U.S.C. § 3161(b)………………………………………………………...24, 33

18 U.S.C. § 3161(h)(7)(A)…………………………………...3, 21, 25, 26, 30, 34, 37, 39

18 U.S.C. § 3161(h)(7)(B)(i)…………………………………………………...26

18 U.S.C. § 3161(h)(7)(B)(ii)…………………………………………………..26

18 U.S.C. § 3161(h)(7)(B)(iv)…………………………………………...26, 30

18 U.S.C. § 3162(a)(1)…………………………………………………27, 36, 44

18 U.S.C. § 3162(a)(2)……………………………………………………………44

United States District Court Southern District of Florida Administrative Order
2020-18………………………………………………………..2, 3, 28, 31, 32, 33

United States District Court Southern District of Florida Administrative Order
2020-21………………………………………………………………………..3

United States District Court Southern District of Florida Administrative Order
2020-22……………………………………………………………4, 36, 37, 38

United States District Court Southern District of Florida Administrative Order
2020-24…………………………………………………………………4, 40

United States District Court Southern District of Florida Administrative Order
2020-33………………………………………………………………………..5

## Table of Citations (cont.)

**Page:**

United States District Court Southern District of Florida Administrative Order
2020-76…………………………………………………………………………6

## **Statement of Subject-Matter and Appellate Jurisdiction**

The District Court had jurisdiction of this case pursuant to 18 U.S.C. § 2251 and 18 U.S.C. § 2252. This court has jurisdiction over this appeal pursuant to 28 U.S.C. § 1291 and 18 U.S.C. § 3741, which gives the court of appeals jurisdiction over all final decisions and sentences of the District Courts of the United States. The notice of appeal was filed on May 20, 2022, from the final judgment entered on May 13, 2022.

## **STATEMENT OF THE ISSUES**

1. Whether the District Court erred in denying the Motion to Dismiss the Indictment.

2. Whether the District Court's granting of the of the first continuance on March 16, 2020 was an Abuse of Discretion with findings of fact that were clearly erroneous.

3. Whether the District Court conducted a proper analysis and made sufficient findings on the remaining continuances throughout the case, as required under the Speedy Trial Act, 18 U.S.C. § 1361, to justify the pre-indictment delay.

## **STATEMENT OF THE CASE**

1. <u>Procedural History</u>

On March 10, 2020, Robert Dunn ("Dunn") was arrested on a criminal complaint alleging that he had received and possessed child pornography in violation of 18 U.S.C. § 2252(a)(2)/(b)(1) and 18 U.S.C. § 2252(a)(4)(B)/(b)(2). DE-1. On the same day, Dunn had his initial appearance before Magistrate Judge William Matthewman where his detention hearing was set for March 17, 2020. DE-2. On March 13, 2020, the Honorable K. Michael Moore, then-Chief Judge of the Court, entered the first of a series of administrative orders regarding the Covid-19 pandemic.

The first order continued jury trials in the Southern District of Florida through March 30, 2020 "in order to protect the public health, and …. To reduce the size of

public gatherings and reduce necessary travel." Administrative Order 2020-18 ("AO 2020-18") [ECF No. 52-1] at 1. It also specified that "the time period of any continuance entered as a result of th[e] order shall be excluded under the Speedy Trial Act, … as the Court finds that the ends of justice are served by taking that action outweigh the interests of the parties and the public in a speedy trial." *Id*. at 1-2. The order further specified that "Criminal matters before Magistrate Judges, such as initial appearances, arraignments, detention hearings, and the issuance of search warrants, shall continue to take place in the ordinary course" and that "Grand Juries shall continue to meet pending further order of the court." *Id*. at 3.

On March 16, 2020, the Government filed an agreed motion to continue arraignment. DE-6. In the motion, the government stated that "due to the unforeseen nature of the global coronavirus pandemic, the government and its agents will not be able to prepare properly for Grand Jury, or confirm that a quorum for Grand Jury will be available, such that an Indictment is returned before the arraignment on March 24, 2020." *Id*. at 1. That same day, U.S. Magistrate Judge Bruce E. Reinhart issued a paperless order granting the Government's motion to continue Dunn's arraignment and continued Dunn's detention hearing to March 18, 2020 and the preliminary/arraignment hearing to April 6, 2020. DE-7.

The paperless order stated that "in light of the current public health emergency, the interests of justice require the Court to take additional steps to protect the health

and safety of parties, counsel, and court staff; they also require that steps be taken to ensure that counsel and clients (particularly incarcerated clients) have meaningful consultation." *Id*. The Court continued the arraignment until April 6, 2020, citing Administrative Order 2020-18, 4 (Individual Judges presiding over criminal proceedings may take such actions consistent with this order as may be lawful and appropriate to ensure the fairness of the proceeding and preserve the rights of the parties). *Id*. Thus, the Court excluded the time until April 6, 2020, under the Speedy Trial Act, 18 U.S.C. § 3161(h)(7)(A), finding that the ends of justice served by this continuance outweigh the interests of the parties and the public in a speedy trial. *Id*.

On March 18, 2020, a detention hearing as to Dunn was held in which the Court ordered Dunn to be detained pretrial. DE-8. At this time, the Government was investigating a separate incident of child exploitation involving Dunn. Based on this other investigation, on March 19, 2020, the Government charged Dunn-again, by criminal complaint, with conspiracy to produce child pornography. DE-1. The next day, Dunn made his initial appearance on this second complaint. DE-5. To keep the cases together, the arraignment in the second case was set for April 6, 2020.

On March 20, 2020, Chief Judge Moore entered a second administrative order concerning the Covid-19 pandemic. In this second order, Chief Judge Moore continued all jury trial in this District "pending further Order from the Court." Administrative Order 2020-21 ("AO 2020-21") [ECF No. 52-2] at 1. The order,

however, stated that all criminal matters before Magistrate Judges, such as initial appearances, arraignments, detention hearings, and the issuance of search warrants, shall continue to take place, and that Grand Juries shall continue to meet pending further Order from the Court. *Id*. at 3.

On March 26, 2020, Chief Judge Moore entered a third administrative order, this time about grand jury proceedings. *See generally* Administrative Order 2020-22 ("AO 2020-22").  This third order continued all grand jury sessions in the Southern District of Florida until April 27, 2020 and excluded from the speedy-trial clock "any continuance of grand jury sessions." *Id*. at 1.

On March 30, 2020, a second Motion to Continue Arraignment and preliminary hearing stipulated by both parties was filed by the Government. DE-10. The following day, U.S. Magistrate Judge Dave Lee Brannon issued a paperless order granting the motion and continued the preliminary hearing/arraignment until May, 21, 2020, finding that the ends of justice are served by the continuance and excluded the time between 4/6/2020 and 5/21/2020. DE-11.

On April 3, 2020, Chief Judge Moore entered a fourth administrative order. *See generally* Administrative Order 2020-24 ("AO 2020-24"). This fourth order continued all jury trials and grand jury sessions in the Southern District of Florida until July 6, 2020. *Id*. at 1. Like the previous orders, this order excluded the time from the continuance period from the Speedy Trial clock and found that the ends of

justice served by taking this action outweigh the interests of the parties and the public in a speedy trial. *Id*. at 2.

On May 20, 2020, a preliminary hearing as to Dunn was held in front of U.S. Magistrate Judge Bruce E. Reinhart, in which the court found that the Government had met its burden to establish probable cause. DE-12.

On May 31, 2020, Chief Judge Moore entered a fifth administrative order concerning the Covid-19 pandemic. *See generally* Administrative Order 2020-33 ("AO 2020-33").  This order continued all jury trials and grand jury sessions in the Southern District of Florida until August 31, 2020, pending further Order from the Court. *Id*. at 2-3. This order contained the same ends of justice findings as the previous orders. *Id*. The Chief Judge's next order came on June 29, 2020. Like the previous orders, this order continued jury trials and grand jury sessions until October 13, 2020. *Id*. at 2-3. Likewise, the order contained the same ends of justice findings as the previous administrative orders. *Id*.

On July 6, 2020, U.S. Magistrate Judge William Matthewman set Dunn's arraignment for both cases for October 21, 2020, finding that the ends of justice was served by the continuance and the court found the time between 7/6/2020 and 10/21/2020 was to be excludable from the Speedy Trial clock. DE-16.

A little over a month later, Chief Judge Moore entered another administrative order on August 11, 2020. This administrative order continued all jury trials and

grand jury sessions in the Southern District of Florida until January 4, 2021, pending further Order of the court. *Id*. at 2-3. Like the previous orders, it found that the ends of justice served by taking this action outweigh the interests of the parties and the public in a speedy trial, and that the period of any continuance of grand jury sessions shall be excluded under the speedy trial clock. *Id*. at 3-4.

On October 20, 2020, an unopposed motion to continue Arraignment was filed by Robert Dunn, requesting the arraignment be continued for 90 days as grand jury sessions had still not reconvened and no indictment had been returned. DE-19. That same day, U.S. Magistrate Judge Bruce E. Reinhart issued a paperless order granting the motion to continue and resetting the arraignment to January 1, 2021, finding that "the time period between October 20, 2020 through January 20, 2021 is excludable from speedy trial calculations, because the ends of justice served by this delay outweigh the interests of the defendant of the public in a speedy trial." DE-20.

That same day, Chief Judge Moore entered another administrative order concerning the Covid-19 pandemic. *See generally* Administrative Order 2020-76 ("AO 2020-76"). This order continued all jury trials in the Southern District of Florida until April 5, 2021. *Id*. at 2. The order continued all grand jury sessions in the Southern District of Florida until November 16, 2020. *Id*. at 3.

On December 1, 2020, a grand jury sitting in the Southern District of Florida returned a five count Indictment against Dunn. DE-33. The Indictment charged

Dunn with one count of Conspiracy to Produce Child Pornography, in violation of 18 U.S.C. §§ 2251(a) and (e) (Count 1); one count of Production of Child Pornography, in violation of 18 U.S.C. §§ 2251(a) and (e) (Count 2); one count of Offense By A Registered Sex Offender, in violation of 18 U.S.C. § 2260A (Count 3); one count of Receipt of Child Pornography, in violation of 18 U.S.C. §§ 2252(a)(2) & (b)(1) (Count 4); and one count of Possession of Child Pornography, in violation of 18 U.S.C. §§ 2252(a)(4)(B) & (b)(2) (Count 5). DE-33.

On January 11, 2021, Dunn filed a *pro se* Motion to Dismiss the Indictment with Prejudice and to vacate the continuances on the basis that the pre-indictment delay violated his constitutional rights to a speedy trial. DE-37. While Dunn was already represented by Assistant Federal Public Defender Caroline McCrae, Dunn asked to proceed by hybrid representation, under the terms of which he would act *pro se* only for the purposes of litigating the motion to dismiss. DE-43. With the understanding that Dunn wanted AFPD McCrae to represent him in all other aspects of the case, the Court allowed Dunn to litigate his Motion to Dismiss *pro se*. DE-48.

On January 21, 2020, an arraignment was held as to Dunn. DE-45. U.S. Magistrate Judge William Matthewman held the hearing by Zoom video teleconference in which Dunn waived his physical appearance in the courtroom and appeared by video. *Id*. The Court found the hearing cannot be further delayed without serious harm to the interests of justice due to the Covid-19 pandemic, the

Care's Act and Chief Judge Moore's Administrative Orders. *Id*. The Court advised the defendant of the charges and possible maximum penalties. *Id*. The defendant waived formal reading, entered a plea of Not Guilty, and demanded a trial by Jury. *Id*.

On February 16, 2021, the Government filed its Response in Opposition to the Motion to Dismiss the Indictment with Prejudice. DE-52. On April 19, 2021, Dunn filed his Reply in Opposition to the Government's Response to the Defendant's Motion to Dismiss the Indictment and to Vacate Continuances. DE-66. On June 15, 2021, an Unopposed Motion to Continue Trial was filed by Dunn. DE-70. On June 28, 2021, the Court granted the unopposed motion to Continue Trial and continued the trial to September 27, 2021 and excluding the time from June 15, 2021 through September 27, 2021. DE-72. On September 3, 2021, an unopposed Motion to Continue Trial was filed by Dunn. DE-74. On September 13, 2021, the Court granted the Unopposed Motion to Continue the trial and set the Jury Trial for January 31, 2022. DE-74. On December 1, 2021, the Court issued an order denying Defendant's Motion to Dismiss the Indictment with Prejudice. DE-78.

On December 17, 2021 a conditional plea agreement was reached. DE-92. Dunn agreed to plead guilty to the following counts of the Indictment: Count 1, which charged Dunn with Conspiracy to Produce Child Pornography in violation of 18 U.S.C. §§ 2251(a) & (e); Count 2, which charged Dunn with Production of Child

Pornography in violation of 18 U.S.C §§ 2251(a) & (e); Count 4, which charged Dunn with Receipt of Child Pornography in violation of 18 U.S.C. §§ 2251(a)(2) & (b)(1); and Count 5, which charged Dunn with Possession of Child Pornography in violation of 18 U.S.C. §§ 2252(a)(4)(B) & (b)(2). *Id*. The Government agreed to seek dismissal of Count 3 of the Indictment after sentencing. *Id*. Pursuant to Federal Rule of Criminal Procedure 11(a)(2), the Government consented to the defendants entry of a conditional plea of guilty and reservation of his right to seek appellate review *only* of the district court's denial of his pro se motion to dismiss the indictment (Docket Entry 78) as to his *statutory speedy trial rights* only and no other issue in the order. *Id*.

Dunn was sentenced to a total of 600 months followed by Supervised Release for a term of life for Counts 1, 2, 4, and 5. DE-120.  The sentence consisted of 360 months as to Count 1; 600 months as to Count 2; 240 months as to Count 4; and 240 months as to Count 5, all to be served concurrently followed by Supervised Release for a term of life. *Id*. Count 3 was dismissed. *Id*. Additionally, Dunn was ordered to pay the United States a special assessment of $400. *Id*. On May 20, 2022, Dunn filed a timely notice of appeal. DE-121. **Mr. Dunn is currently incarcerated pending the outcome of this appeal.**

   2. <u>Statement of the Facts:</u>

The United States of America and Robert Dunn agreed that had this case gone to trial, the United States would have proven the following facts beyond a reasonable doubt.

On September 3, 2019, a Federal Bureau of Investigation (FBI) Task Force Officer (TFO) received a CyberTip from the National Center for Missing and Endangered Children (NCMEC). The tip indicated that on June 24, 2019 at 18:39 UTC, Google identified a Google Photos storage account belonging to robertaDunn7975@gmail.com containing two (2) unique child sexual abuse material (CSAM) photos (a/k/a child pornography). Both images portrayed different prepubescent females with their legs spread exposing their pubic regions. Google provided T-Mobile phone number 941-xxx-7484, and email address robertDunn7975@yahoo.com, linked to this account. Google provided IP addresses used to access that account from as far back as September 2018, including the IP address used to upload the CSAM, which was owned by comcast.

T-mobile identified the subscriber of the phone number as Dunn, the account creation date of January 25, 2019, the termination date of August 25, 2019, and then IMEI number of the phone as 354953075263800. Comcast provided the IP address was assigned to DUNN's physical address in North Port, Florida. Dunn had reported this as his residence to the Florida Department of Law Enforcement in early 2019 when he began to register as a sex offender after being convicted February 20, 2014

10

in Manatee County, Florida for traveling to meet a parent to solicit/entice a child to commit a sex act and attempted lewd or lascivious battery of a child (Manatee County Case Number 2013CF001032A). During all times of the facts listed in this document, DUNN was in fact a registered sex offender.

A search warrant return from Google for the robertaDunn7975@gmail.com account contained the CSAM images described above in the first CyberTip. Contained within the photos folder in the response was a sub-folder entitled, "Hangout_Robert Dunn to Wendy Dunn," which contained the same images from the CyberTip as well as an image of DUNN that showed his face and his penis. In the image, DUNN appeared to be masturbating on a couch.

On October 16, 2019, the FBI TFO receive a second CyberTip regarding the Google account robertantondunn7975@gmail.com, created on or about June 24, 2019 at 18:56 UTC created approximately 17 minutes after Google reported the robertaDunn7975@gmail.com account to NCMEC. The tip contained CAM, identified in the account's Google Drive, of a prepubescent female with their legs spread exposing her pubic region. Google provided login IP addresses for the account from June 24, 2019 through September 1, 2019. Although multiple IP address logins originated in North Port, Florida, the last IP address to access the robertantondunn7975&gmail.com account was an AT&T IP address. AT&T identified the subscriber at DUNN's Lake Worth, FL 33463 (Lake Worth residence).

A search of the Florida Department of Law Enforcement (FDLE) sexual offender registration website for DUNN revealed that on August 10, 2019, DUNN had changed his permanent address from North Port, FL to the Lake Worth residence.

A search warrant return from Google for the robertadunn7975@gmail.com account revealed the same CSAM as in the second CyberTip. The response also included multiple Google Hangout chats with various women, including "Wendy" using Google account from July – August 2019. In Dunn's conversation with "Wendy" on August 21, 2019, Dunn reported his address as the Lake Worth residence. In the same conversation, DUNN expressed his desire to have the female and a young girl fly to the United States for the purposes of sex and to teach them to be a "sex slave". He also expressed his desire to attend a Catholic seminary to become a priest for the purpose of having sex with children.

Law enforcement surveillance confirmed Dunn lived at the Lake Worth residence. On March 10, 2020, a search warrant was executed at the Lake Worth residence. Dunn provided a consensual, non-custodial statement, during which he admitted to possessing and receiving pornography for the past two (2) years. He admitted the nudistmale7975 and robertdunn7975 were his accounts.

Dunn admitted that he downloaded multiple child pornography images from the internet. He could only recall that he obtained the images from a google search, and he clicked on "links" to obtain them. He recalled using search terms related to child

12

pornography. He described the images of minors to include at least one nude image of an approximately 12-year-old female, with her legs spread open, and her vagina fully revealed to the camera. He admitted that he distributed multiple child pornography through the Goggle Hangouts application in the chat.

Dunn admitted that he owned a Dell laptop computer Service Tag HRS7Y32M. During the search of Dunn's bedroom, agents discovered his wallet, driver's license, and Dell laptop computer hidden in the closet wrapped in plastic. The power cord for the computer was lying next to his bed, and a mouse was on top of the bed. During an onsite preview of the computer, multiple child pornography images were found in the recycle bin folder, having previously been in the downloads folder. Those files were received onto the computer on January 17, 2020 and deleted within the next 12 hours. Agents found dozens of images and at least eight (8) videos of CSAM. Dunn stated he could not remember specifically downloading these images and videos, but did admit that he had downloaded CSAM specifically using this Dell laptop during the past two years.

Dunn's iPhone 62, serial number 354953075263808 (phone number 561-334-8293) was found in his pocket. An examination of the device revealed that the iPhone 6s had an iCloud account connected to Dunn's Yahoo! email address, Google Hangouts and Facebook accounts using Dunn's Yahoo! and Gmail Accounts, including nudistmale7975@gmail.com. Agents further found a video entitled

IMG_0808.mov produced by the same phone. In the video Dunn recorded himself masturbating for several minutes. On three occasions during the masturbatory episode, he panned the phone's camera up to view his television. Each time a different image of CSAM was visible on the television screen. The metadata of the video indicates that the video was created on January 1, 2020.

Dunn's iPhone 10 (phone number 941-416-3617) was found in his bedroom. AT&T provided records that this phone number was assigned to Dunn's niece at the Lake Worth residence. An examination of the device revealed an iCloud account connected to Dunn's Yahoo! email address, Google Hangouts and Facebook accounts using Dunn's Yahoo! and Gmail Accounts, including Nudistmale7975@gmail.com.

Dunn also stated that he had been in Facebook communication with a woman named "Tonya" whom he believed to be in Colorado. Dunn said that he asked "Tonya" to produce an image of her performing oral sex on her 6-year-old son (Minor Victim 1) and to send Dunn the picture. Dunn admitted that she did in fact produce the CSAM image at his request, and sent it to him through Facebook Messenger, which he then used to view the image. He admitted that she sent three (3) such images of CSAM that he viewed through Facebook Messenger. He stated that he went to Western Union in Palm Beach County and sent "Tonya" money to

help her move to Florida to live with him, along with her children, whereupon he would be the "master" and "Tonya" would be the "slave."

After Dunn's arrest for possession and receipt of child pornography on March 10, 2020, a search warrant was issued to Facebook for Dunn and "Tonya's" accounts. The return from Facebook for Dunn's account, ID# 1000256336351, and "Tonya's" account, ID# 1048088014, confirmed that in fact they had communication which began on November 19, 2019 and ended on November 21, 2019. "Tonya" was identified as the separately charged co-defendant Tonya Bagley ("Bagley"). Dunn created the Facebook account using his name, "Robert Dunn;" his email address, robertdunn7975@yahoo.com; his current location as Lake Worth, Florida;  verified phone numbers of 561-334-8293 (as of January 27, 2020) (from his nudistmale7975 account), 941-275-7484 (from the robertadunn7975 account) and 941-416-3617 (used for iPhone 10); and his real date of birth.

During the communications or direct messages ("DM's") between November 19 and 21, 2019, Dunn was in the Southern District of Florida and Bagley was in the District of Colorado.

The Facebook messages from November 19, 2019 through November 21, 2019 corroborated Dunn's statement regarding Bagley. Dunn initiated the DM with Bagley on November 19, 2019. The messages indicated that Bagley and Dunn agreed to engage in a "master-slave" relationship during which time they exchanged

photographs of each other. During the communication, Bagley provided identifying information about Minor Victim 1, her other 12-year-old son, and her 19-year-old daughter.

Dunn DM'd that he used to live on the west coast of Florida but had moved to Lake Worth, Florida. Multiple photographs that Dunn sent to Bagley during the three-day messaging were of himself in his home or in the yard in Lake Worth, as identified during the execution of the search warrant at the Lake Worth residence on March 10, 2020. Bagley DM'd that she lived in Colorado.

Dunn and Bagley DM'd extensively about having a dominant-submissive relationship: Dunn the master, Bagley the slave. Dunn DM'd Bagley that he wanted her to move to Florida to be his slave. Dunn asked if Bagley would bring both of her sons to Florida; Bagley responded in the affirmative. They discussed Bagley's 19-year-old daughter being a surrogate for their love child. Dunn repeatedly requested of Bagley, who willingly agreed, that upon living together, she would always be naked and perform oral sex on Dunn unless he directed her otherwise. They both agreed it would be acceptable for Bagley's children to be present during these activities. Dunn and Bagley agreed that the children would live nude with them as well. They both further agreed that watching pornography in front of the children would be appropriate.

During a series of DMs, Bagley discussed Minor Victim 1 previously having an erection, looking at her vagina, and on one occasion, touching her face with his penis while she was sleeping. Dunn responded how this excited him, sexually. Dunn inquired about Bagley giving the child oral sex, to which Bagley responded that Minor Victim 1 once asked her for oral sex. When Dunn asked if Bagley would consider this behavior wrong, Bagley said she would consider it if the boy was older. Dunn DM'd how the legal age of adulthood was not correct in his mind and that adulthood began when a child reached puberty, regardless of the age.

Dunn DM'd a "contract" to Bagley which outlined rules that the master and slave agree to. Dunn DM'd the rules one at a time and requested Bagley send a nude photograph of herself every time she agreed to a rule. Bagley did this for each of the ten (10) rules, DM'ing different photographs of herself naked on a bed. Rule Four, entitled, "The Law of being Sexually Pleasing," included among other things, paragraph "F," in which Dunn DM'd that "… if I do so order her to suck or even jack off one of her sons or eat her daughter's pussy – to perform a sexual activity with her children – that she will do it without question."

Dunn further DM'd in Paragraph "I" of Rule Four that, "[t]he slave acknowledges that she will do everything within her power to convince her sons not to rat her out for any reason that she may perform oral sex upon them or give the hand jobs when I request it of her." In acknowledging her agreement and acceptance to Rule Four,

including paragraphs "F" and "I", Bagley DM'd a nude photograph of herself lying on her back in a bed with her legs up in the air exposing her vagina. Dunn DM'd Bagley inquiring who captured each of the aforementioned photographs. Bagley said Minor Victim 1 took the photographs.

After the rules were established and agreed to, Dunn messaged Bagley to "suck [Minor Victim 1]s dick when you put him to bed tonight." Dunn then requested that Bagley take a photograph of her on her knees with Minor Victim 1's penis by her face. She responded, "Yes Master. Thank you." Bagley sent a photograph and apologized for the poor quality of the photograph saying that Minor Victim 1 took the photograph. Dunn requested that she retake the photograph.

Bagley sent a photograph of Minor Victim 1's torso and hand. Minor Victim 1 wore a pair of blue pajamas, slightly pulled down at the waist. Bagley's hair was near the child's pelvic region. Bagley DM'd that Minor Victim 1 had the pajamas because he was cold. Several times during the 3-day of messages, Bagley reminded Dunn that the temperature was below freezing in Colorado. Bagley DM'd that she was going to have Minor Victim 1 remove the pajamas. Dunn then stated, "Good. See to it that he wears nothing and retake the photo but let me see your face more and just the head of his dick in your mouth. I was to see full skin here and no clothing in the way." Bagley responded, "Yes Master" and "Master permission to wait. Their father just showed up unannounced." Bagley had earlier DM'd Dunn that she and

her husband were separated and both sons lived with her. After some time, Dunn DM'd about his request for photographs: "When you are available to talk just send me a full body pic of both you and [Minor Victim 1] completely naked sitting next to each other so I know you're done. I don't want to see one shred of clothing on any one of you."

A few hours later, Bagley sent a photograph of her and Minor Victim 1, in which Bagley's face was visible, and she was shirtless down to her upper breast area. Minor Victim 1 was visible from his face down to his torso area. He was shirtless and appeared to be naked, but his genitals are not in the frame. Dunn DM'd in response, "Now that [Minor Victim 1] is naked with you I want to see a couple pics, one with his dick inside your mouth and the other you touching the head of his dick with your tongue." In response, Bagley sent a photograph of her face with her tongue touching the tip of Minor Victim 1's uncircumcised penis, with his hand in view. Dunn inquired if Minor Victim 1 liked it. Bagley DM'd, "He says it's weird." Dunn DM'd, "lol" and "Alright now a pic with it all the way in your mouth." Bagley sent a photograph of her face with her lips around Minor Victim 1's penis, with his hand in view. Dunn DM'd, "Good slave" to which Bagley messaged, "Thank you Master." Dunn then inquired about Bagley's older son being involved in the same way as Minor Victim 1 had been with oral sex, to which Bagley responded that he was refusing to leave his room.

Later when discussing producing videos of Minor Victim 1, Dunn DM'd, "… don't make and send those videos until I tell you too. Let's be smart and not use Facebook in case of monitoring. I created you a gmail account that you'll use under the app of Hangouts so download hangouts on your phone and then login using mastersslave7975@gmail.com with password ######### and look for me in hangouts which you should find easily under nudistmale7975@gmail.com".

When Bagley was arrested at her District of Colorado residence on March 18, 2020, her iPhone X was seized and searched with her consent. Agents found the master-slave contract Dunn had sent Bagley, images that Bagley sent at Dunn's request, and the images of Bagley having oral sex with Minor Victim 1. Agents also found more than 3400 text messages with Dunn from December 10, 2019 through February 21, 2020. Specifically, on December 10, 2019, Dunn asked Bagley to produce videos performing oral sex on Minor Victim 1; on December 31, 2019, Dunn repeated this request; on January 8, 2020, Dunn reminded Bagley that she performed oral sex on Minor Victim 1; and on January 20, 2020, Dunn texted that he was a registered sex offender.

In response to a search warrant for this Gmail account, Google provided the hangout messages for Dunn's nudistmale7975@gmail.com account which included communication with Bagley from November 21, 2019 through February 2020.

Minor Victim 1 confirmed the production of the child pornography of him by his mother, Bagley. Minor Victim 1 identified the pajamas, from the photograph the Bagley sent Dunn, as his pajamas. The pajamas were later recovered from a storage unit Bagley rented in Colorado.

## Standard of Review

The Court of appeals reviews *de novo* the denial of a defendants motion to dismiss an indictment based on a violation of the Speedy Trial Act, and any factual determinations made by the District Court with regard to excludable time receive clear error review. *United States v. Ammar*, 842 F.3d 1203 (11th Cir. 2016). The Court of Appeals reviews the district court's decision to grant an ends-of-justice continuance under the Speedy Trial Act for an abuse of discretion. 18 U.S.C. § 3161(h)(7)(A); *United States v. Larson*, 627 F.3d 1198 (10th Cir. 2010).

## Summary of  the Argument

In this case, the District Court erred in denying the Motion to Dismiss the Indictment with prejudice. To begin, the first continuance granted in this case on March 16, 2020, was an abuse of discretion and the order contained findings of fact that were clearly erroneous. The court simply accepted the government's contention that it could not prepare for the grand juries, nor confirm a quorum for the Grand Jury, even though Grand Juries were continuing to meet in their ordinary course at the time pursuant to Chief Judge Moore's administrative orders. The Court failed to

inquire as to why the government needed more time to prepare and base its findings on those reasons, as required to properly exclude time under the Speedy Trial clock. Had the Court conducted the proper inquiry, it would have found that Grand Jury sessions were continuing to meet in their ordinary course and that a quorum could have been confirmed. As such, the order was an abuse of discretion and the findings of fact were clearly erroneous.

The remaining orders granting the continuances throughout the case failed to provide the requisite analysis and findings of fact to properly exclude time under the Speedy Trial clock. The Speedy Trial Act and controlling Supreme Court case law explicitly states that in order to properly exclude time, the Court must state its reasons for finding that the ends of justice served by granting the continuances outweigh the interests of the defendant and the public in a Speedy Trial. Those reasons, within the findings, must be found after the court conducts a proper analysis of the statutory factors to exclude time under the Speedy Trial Act. The orders granting the continuances in this case failed to provide any reasons as to why the ends of justice were served by granting the continuance, and the orders provide no indicia that the Court conducted the proper analysis of the statutory factors the court must consider under the Speedy Trial Act. As such, the orders failed to provide sufficient findings, and the time cannot be excluded under the Speedy Trial Act. The resulting delay spanned over 289 days, vastly exceeding the thirty (30) day

requirement to indict a defendant. Therefore, the Court must dismiss the indictment with prejudice, as Dunn suffered significant prejudice resulting from the extensive pre-indictment delay.

## Argument

### I.    The District Court Erred in Denying the Motion to Dismiss the Indictment With Prejudice.

The Covid-19 pandemic has presented novel challenges, not only to the judiciary system, but to the entire world as a whole. But the Constitution was created to stand the test of time. It has stood the test of time for over 230 years, and it will continue to do so. "Even in a pandemic, the Constitution cannot be put away and forgotten." *Roman Cath. Diocese of Brooklyn v. Cuomo*, 141 S. Ct. 63, 208 L. Ed. 2d 206 (2020). There is no bigger test for the government and the courts, than to abide by its laws and constitution in the face of emergencies such as a global pandemic. As the Supreme Court has stated, "Nothing can destroy a government more quickly than its failure to observe its own laws, or worse, its disregard of the charter of its own existence." *Mapp v. Ohio*, 367 U.S. 643, 81 S. Ct. 1684, 6 L. Ed. 2d 1081 (1961).

In the case at hand, the District Court abused the ends-of-justice exception to the Speedy Trial Act throughout the case. The District Court failed to conduct a proper analysis of the statutory factors to the case-specific facts and failed to make sufficient findings to properly exclude time under the Speedy Trial clock. The resulting pre-

indictment delay violated the Speedy Trial Act and warrants dismissal of the Indictment with Prejudice. Those issues are discussed in more detail below.

### a. The District Court's Granting of the First Continuance Was An Abuse of Discretion And It's Findings of Fact Were Clearly Erroneous

The Sixth Amendment provides that "in all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury." U.S. Const. amend. VI. The right to a speedy trial "has roots at the very foundation of our English law heritage" and "is one of the most basic rights persevered by our constitution." *Klopfer v. State of N.C.*, 386 U.S. 213, 224, 226, 87 S.Ct. 988, 18 L.Ed.2d 1 (1967). Indeed, "[e]xcept for the right of a fair trial before an impartial jury, no mandate of our jurisprudence is more important" than a defendant's right to a speedy trial. *Furlow v. United States*, 644 F.2d 764, 769 (9th Cir. 1981). Congress enacted the Speedy Trial Act in 1974 in order to make effective the Sixth Amendment's guarantee of a speedy trial. *United States v. Olsen*, 467 F. Supp. 3d 892 (C.D. Cal. 2020).

The Speedy Trial Act requires that "[a]ny information or indictment charging an individual with the commission of an offense shall be filed within thirty days from the date on which such individual was arrested or charged with a summons in connection with such charges." 18 U.S.C. § 3161(b). Recognizing that criminal cases vary widely and that there are valid reasons for greater delay in particular cases, the

24

Act includes a long and detailed list of periods of delay that are excluded in computing the time. *Zedner v. United States*, 547 U.S. 489, 126 S. Ct. 1976, 164 L. Ed. 2d 749 (2006).  When a court is presented with such a reason, the Act allows the judge to exclude the period of justifiable delay from the speedy-trial computation. *Id*. Among the various exclusions, the Act permits an "end-of-justice" continuance. *Id*.

Title 18 U.S.C. § 3161(h)(7)(A) provides:

> Any period of delay resulting from a continuance granted by any judge on his own motion or at the request of the defendant or his counsel or at the request of the attorney for the Government, if the judge granted such continuance on the basis of his findings that the ends of justice served by taking such action outweigh the best interest of the public and the defendant in a speedy trial. No such period of delay resulting from a continuance granted by the court in accordance with this paragraph shall be excludable under this subsection unless *the court sets forth, in the record of the case, either orally or in writing, **its reasons** for finding that the ends of justice served by the granting of such continuance outweigh the best interests of the public and the defendant in a speedy trial.*
> 18 U.S.C. § 3161(h)(7)(A) (emphasis added).

The spread of Covid-19 and the resulting court closures have made Section 3161(h)(7) the exclusion of choice in recent months. *United States v. Harris*, 460 F. Supp. 3d 973 (E.D. Cal. 2020). District courts, to little objection, have often invoked this catch-all provision in the wake of unforeseeable, emergency circumstances. *Id.* Courts, however, must conduct far more deliberate inquiries into whether an ends-of-justice continuance is justified by the circumstances surrounding the particular

case. *Id*. Regardless of who seeks the continuance, a court must satisfy itself of each of Section 3161(h)(7)'s requirements before granting the motion. *Id*. To do so, the district court must consider certain factors, such as whether the failure to grant the continuance would "result in a miscarriage of justice," § 3161(h)(7)(B)(i); whether due to the nature of the case (or other factors), the case is too complex to reasonably expect adequate preparation within the Speedy Trial Act's time limits, § 3161(h)(7)(B)(ii); or whether a refusal to continue the case would deny the defendant "reasonable time to obtain counsel," or would unreasonably deny either party time for "effective preparation," § 3161(h)(7)(B)(iv); *United States v. Ammar*, 842 F.3d 1203 (11th Cir. 2016).  After independently considering factors listed in Section 3161(h)(7)(B), "among others," a judge must determine whether "the ends of justice served by granting a continuance" outweigh "the best interest of the public and the defendant in the speedy trial" 18 U.S.C. § 3161(h)(7)(A).

The ends-of-justice exclusion from the speedy trial period is meant to be a rarely used tool for those cases demanding more flexible treatment, and thus ends-of-justice continuances should not be granted cavalierly. *United States v. Larson*, 627 F.3d 1198 (10th Cir. 2010). The record must clearly establish that the district court considered the proper factors at the time an ends-of-justice continuance was granted under the speedy trial act. *Id*. In setting forth its findings in support of an ends-of-justice continuance was granted under the Speedy Trial Act, the district

court need not articulate facts which are obvious and set forth in the motion for the continuance itself, but a record consisting of only short, conclusory statements lacking detail is insufficient. *Id*. The record must explain "why the mere occurrence of the event identified by the party as necessitating the continuance results in the need for additional time… Simply identifying an event, and adding the conclusory statement that the event requires more time for counsel to prepare, is not enough. *Id*. (quoting *United States v. Toombs*, 574 F.3d 1262 (10th Cir. 2009)). If the District Court fails to consider that statutory factors for granting an ends-of-justice continuance under the Speedy Trial Act, the continuance period cannot be excluded under the Act's ends-of-justice provision. *Id.* If the thirty-day time limit is not met, the Act entitled the defendant to the dismissal of the charged contained in the initial complaint. *United States v. Mathurin*, 690 F.3d 1236 (11th Cir. 2012); *See* 18 U.S.C. § 3162(a)(1).

In this case, Dunn was arrested on March 10, 2020. DE-1. On that same day, Dunn's detention hearing was set for March 17, 2020, while his preliminary hearing/arraignment was set for March 24, 2020. DE-2. Three days after Dunn's arrest, on March 13, 2020, the Honorable K. Michael Moore, then-Chief Judge of the Court, entered the first of a series of administrative orders regarding the Covid-19 pandemic.  This first order continued all jury trials in the Southern District of Florida scheduled to begin on or after March 16, 2020, until March 30, 2020,

pending further order from the court. While jury trials were continued, the order

stated that "criminal matters before Magistrate Judges, such as initial appearances,

*arraignments*, detention hearings, and the issuance of search warrants, *shall continue*

*to take place in their ordinary course*." AO-2020-18 (emphasis added). The order

further stated that "Grand juries shall continue to meet pending further order of the

court." *Id*.

On March 16, 2020, the Government filed an Unopposed Motion to Continue

Arraignment. DE-6. The motion stated that, "Due to the unforeseen nature of the

global coronavirus pandemic, the government and its agents will not be able to

prepare properly for Grand Jury, or confirm that a quorum for Grand Jury will be

available, such that an Indictment is returned before the arraignment on March 24,

2020." *Id*.

The same day, on March 16, 2020, U.S. Magistrate Judge Bruce E. Reinhart

issued a paperless order granting the Government's unopposed Motion to Continue

Arraignment. DE-7. The order stated:

> "in light of the current public health emergency, the interests of justice
> require the Court to take additional steps to protect the health and safety
> of the parties, counsel, and court staff; they also require that steps be
> taken to ensure that counsel and client (particularly incarcerated clients)
> have meaningful consultation. Therefore, the Court continues the
> arraignment in this matter until April 6, 2020, at 10:00 a.m. See
> Administrative order 2020-18, 4 (Individual judges presiding over
> criminal proceedings may take such action consistent with this order s
> may be lawful and appropriate to ensure the fairness of the proceedings
> and preserve the rights of the parties). The time from now until April 6,

2020, shall be excluded under the Speedy Trial Act, 18 U.S.C. § 3161(h)(7)(A), as the Court finds that the ends of justice served by this continuance outweigh the interests of the parties and the public in a speedy trial. The Court will also continue the detention hearing until March 18, 2020, at 10:00 a.m."
*Id.*

This paperless order granting the Motion to Continue Arraignment was an abuse of discretion. In its Motion to Continue Arraignment, the Government asserted that it would not be able  to prepare properly for the Grand Jury, or confirm that a quorum for Grand Jury would be available. The Court in turn plainly accepted their argument without properly inquiring as to why they wouldn't be able to prepare properly for the grand jury, or that a quorum for Grand Jury would be present. Similar to the facts of *Larson*, the Government asserted that an event, the pandemic, requires more time to sufficiently prepare for the grand jury. The Government did not specify any details in its motion as to why it needed more time to prepare. Likewise, the court simply accepted this contention, without inquiring as to why the Government needed more time to prepare. The Court did not point to anything specific in this case to support its findings that more time was required to prepare. By doing so, the Court identified the event, and added conclusory statements that the event requires more time to prepare, which is not sufficient. *Larson*, 627 F.3d at 1204.

Moreover, the record must clearly establish that the district court considered the proper factors at the time an ends-of-justice continuance was granted under the

speedy trial act. *Id*. Nevertheless, the District Court considered only one of the statutory factors of Section 3161(h)(7)(B): Competency/continuity of counsel. Section 3161(h)(7)(B)(iv) requires judges to consider counsel's ability to prepare and present their case, even when the case is not so complex that it bears independent consideration under the "complexity" factor. For obvious reasons, this factor intersects with the current Covid-19 pandemic. The intuitive appeal of this factor, however, does not free judges from making case specific findings that are required by Section 3161(h)(7)(A). When invoking this provision, the government should offer something about the specific people and documents [that are] involved in the underlying case, why they [will be] unavailable, or what information they were looking for [that] they lacked access to because of teleworking or other conditions [that were] created by Covid-19. *Elms v. United States*, 457 F. Supp. 3d 897 (D. Nev. 2020) (evidence did not support magistrate judge's conclusion that justice favored delaying defendant's preliminary hearing where the judge's findings did not provide any reasons for its delay… beyond the general statement of abstract difficulty). Judges cannot conclude that one of the Section 3161(h)(7)(B) factors justify a continuance without tethering that conclusion to case-specific considerations. *United States v. Harris*, 460 F. Supp. 3d 973 (E.D. Cal. 2020). The Magistrate Judge in this case only considered one of the statutory factors, which the statute itself and the supporting case law make clear is insufficient to grant the continuance. Even

while only considering one of the necessary factors, the court failed to explain how the specifics of this case warranted the continuance under that one factor. The court simply just made vague, conclusory statements without explaining how the facts of this case warranted the continuance under that enumerated factor.

Not only did the court fail to consider the other statutory factors as required by the STA, but the continuance was granted without any inquiry into case specific facts as to why the government was unable to prepare. Judges are not entitled to "rely on unverified claims" of the party seeking the continuance. *United States v. Lloyd*, 125 F.3d 1263 (9th Cir. 1997) (district court may not simply credit vague statements by one party's lawyer about possible scheduling conflicts or general desires for continuance of other parties or their attorneys; instead, it must conduct appropriate inquiry to determine whether various parties actually need a continuance and how long of a delay is actually required). The Court in this case simply credited the government's contention that it would not be able to prepare properly for the Grand Jury. The Court improperly failed to conduct a proper inquiry as to why the government could not prepare for the Grand Jury, and by simply crediting the vague statement, made a clearly erroneous finding that the continuance was needed. Moreover, had the Court conducted the proper inquiry, the Court would have found that a quorum for the Grand Jury could have been confirmed as Grand Juries were continuing to meet in their ordinary course at this time. *See* AO-2020-18.

31

Furthermore, the Court granted the continuance in direct contradiction to Chief Judge Moore's administrative orders. In granting the Government's motion to continue, the Court relied on Administrative order 2020-18, 4 "Individual judges presiding over criminal proceedings may take such action consistent with this order as may be lawful and appropriate to ensure the fairness of the proceedings and preserve the rights of the parties." The Magistrate Judge's order, however, is not consistent with Chief Judge Moore's administrative order. In fact, it directly contradicts the Chief Judge's order. Administrative Order 2020-18 only continued jury trials and trial specific deadlines. AO 2020-18 at 1 (Effective immediately, all jury trials in the Southern District of Florida scheduled to begin on or after March 16, 2020, until March 30, 2020, are continued pending further order of the court. All trial-specific deadlines in criminal cases scheduled to begin before March 30, 2020, are continued pending further order from the court). While jury trials were continued, the Administrative Order made it clear that "Criminal matters before Magistrate Judges, such as initial appearances, *arraignments, detention hearings*, and the issuance of search warrants, *shall continue to take place in the ordinary course*." *Id*. at 3 (emphasis added). The Order further stated, "Grand juries shall continue to meet pending further order of the Court." *Id*. The Magistrate's order was not consistent with the Chief Judges Administrative Order, rather, it directly contradicted it.

While the Government asserted that they couldn't confirm a quorum for a Grand Jury, Grand Juries were still continuing to meet. In fact, the Chief Judge specifically ordered Arraignments, detention hearing, and grand juries to continue in their ordinary course at that time. AO-2020-18 at 3. The Magistrate Judge's plain acceptance of the Government's contention, without inquiry into why the Government needed more time to prepare and why a quorum for the grand jury could not be confirmed while Grand Juries were, in fact, still continuing to meet was an abuse of discretion. As such, the Continuance should be vacated and the time tolled from this continuance should not be excluded under the Speedy Trial clock.

### b. The District Court Abused the Ends-of-Justice Exceptions and Failed to Make Sufficient Ends-of-Justice Findings, as required by the Speedy Trial Act to Properly Exclude Time

Following the initial improper continuance argued *supra*, the Court continued Dunn's arraignment three more times. The Court's orders granting the continuances lacked the sufficient findings required to properly continue the case and exclude time under the Speedy Trial Act, resulting in a Speedy Trial violation.

The Speedy Trial Act requires that "[a]ny information or indictment charging an individual with the commission of an offense shall be filed within thirty days from the date on which such individual was arrested or charged with a summons in connection with such charges." 18 U.S.C. § 3161(b). Recognizing that criminal cases vary widely and that there are valid reasons for greater delay in particular cases, the

Act includes a long and detailed list of periods of delay that are excluded in computing the time. *Zedner v. United States*, 547 U.S. 489, 126 S. Ct. 1976, 164 L. Ed. 2d 749 (2006). When a court is presented with such a reason, the Act allows the judge to exclude the period of justifiable delay from the speedy-trial computation. *Id*. Among the various exclusions, the Act permits an "end-of-justice" continuance. This provision permits a district court to grant a continuance and to exclude the resulting delay if the court, after considering certain factors, makes on-the-record findings that the ends of justice served by granting the continuance outweigh the public's and defendant's interest in a speedy trial. *Id*. at 1984. This provision gives the district court discretion-within limits and subject to specific procedures- to accommodate limited delays for *case-specific* needs. *Id*. at 499 (emphasis added).

Title 18 U.S.C. § 3161(h)(7)(A) provides:

> Any period of delay resulting from a continuance granted by any judge on his own motion or at the request of the defendant or his counsel or at the request of the attorney for the Government, if the judge granted such continuance on the basis of his findings that the ends of justice served by taking such action outweigh the best interest of the public and the defendant in a speedy trial. No such period of delay resulting from a continuance granted by the court in accordance with this paragraph shall be excludable under this subsection unless *the court sets forth, in the record of the case, either orally or in writing, **its reasons** for finding that the ends of justice served by the granting of such continuance outweigh the best interests of the public and the defendant in a speedy trial.*
>
> 18 U.S.C. § 3161(h)(7)(A) (emphasis added).

For purposes of Speedy Trial Act, the ends of justice exclusion for a continuance must be used only where necessary and may not be granted as a matter of course. *United States v. Martin*, 742 F.2d 512 (9th Cir. 1984). The ends-of-justice provision is not a general exclusion for every delay, and any continuance granted under it must be based on specific underlying factual circumstances. *Id*. Because Section 3161(h)(7)(A) requires the balancing of the factors to be case-specific, the Court cannot find that considerations surrounding Covid-19's impact on public safety and the court's operations will, in every case, outweigh the best interest of the defendant and the public in a speedy trial. *United States v. Harris*, 460 F. Supp. 3d 973 (E.D. Cal. 2020). And although ends-of-justice interests and speedy-trial interests are concededly abstract, a judge must nevertheless *attempt to define them in each case* and assess which set of interests is weightier under the circumstances. *Id.* at 977 (emphasis added).

The record must clearly establish that the district court considered the proper factors at the time an ends-of-justice continuance was granted under the speedy trial act. *United States v. Larson*, 627 F.3d 1198 (10th Cir. 2010). In setting forth its findings in support of an ends-of-justice continuance was granted under the Speedy Trial Act, the district court need not articulate facts which are obvious and set forth in the motion for the continuance itself, but a record consisting of only short, conclusory statements lacking detail is insufficient. *Id*. If the district court fails to

consider that statutory factors for granting an ends-of-justice continuance under the Speedy Trial Act, the continuance period cannot be excluded under the Act's ends-of-justice provision. *Id.* If the thirty-day time limit is not met, the Act entitles the defendant to the dismissal of the charged contained in the initial complaint. *United States v. Mathurin*, 690 F.3d 1236 (11th Cir. 2012); *See* 18 U.S.C. § 3162(a)(1).

In this case, throughout the entirety of the pre-indictment delay, the Chief Judge of the Southern District of Florida continually issued administrative orders concerning the Covid-19 pandemic. These orders continued jury trials, grand jury proceedings, and instructed judges withing the district on how to conduct the courts through the Covid-19 pandemic. All of the Chief Judge' administrative orders continuing proceedings contained a provision addressing the Speedy Trial Act, finding that the ends of justice served outweigh the interests of the public and the defendant. For example, Administrative Order 2020-22 continued Grand Juries sessions in the Southern District of Florida stated:

> "Although the Speedy Trial Act requires an information or indictment charging an individual with the commission of an offense to be filed within thirty (30) days from the date on which such individual was arrested or served with a summons in connection with such charges, the period of any continuance of grand jury sessions shall be excluded under the Speed Trial Act, pursuant to 18 U.S.C. § 3161(h)(7)(A) and (B)(iii). The Court finds that the ends of justice served by taking this action outweigh the interests of the parties and the public in a speedy trial because the continuance of grand jury sessions in this district renders it unreasonable to expect the return and filing of an indictment within the period set forth in 18 U.S.C. § 3161(b)... This Order and period of exclusion are incorporated by reference as a specific finding

pursuant to 18 U.S.C. § 3161(h)(7)(A) in the record of each pending case where the Speedy Trial Act applies. *See Zedner v. United States*, 547 U.S. 489, 506-07 (2006)."
AO-2020-22 at 1-2.

With all due respect to the Court and Chief Judge Moore, these all-inclusive blanket continuances do not suffice under the current requirements of the Speedy Trial Act and the corresponding case law. To the contrary, Section 3161(h)(7)(A) explicitly states that "no such period of delay resulting from a continuance granted by the court in accordance  with this paragraph shall be excludable under this subsection unless the court sets forth, *in the record of the case*," 18 U.S.C. § 3161(h)(7)(A) (emphasis added). Moreover, there is no case law to support the proposition that a judge may grant blanket continuances under the Speedy Trial Act and apply it to every pending case in the district. In fact, *Zedner*, the case relied upon by Chief Judge Moore, explicitly states that the provision of the Speedy Trial Act of relevance here is to accommodate limited delays for *case-specific* needs. *Zedner*, 547 U.S. at 499. While district courts, to little objection, have often invoked this catch-all provision in the wake of unforeseeable, emergency circumstances, courts, must conduct far more deliberate inquiries into whether an ends-of-justice continuance is justified by the circumstances surrounding the particular case. *Elms v. United States*, 457 F. Supp. 3d 897 (D. Nev. 2020).  Simply put, a general, all-inclusive blanket continuance that states it applies to every case within the district cannot be reasonably said to be case-specific as the statute and case law requires. As

such, the Administrative Orders of the District are not controlling as to whether the

court made sufficient findings to properly exclude time under the Speedy Trial Act.

What is of relevance and determinative in this case are the orders and findings that

the Magistrate Judges made throughout this case. Those orders and findings are

discussed below.

Following the initial continuance of the arraignment discussed *supra*, the

Government filed a second unopposed Motion to Continue Arraignment on March

30, 2020. DE-10. In its motion, the government requested that the arraignment be

continued 45 days from April 6, 2020, to May 21, 2020, citing Chief Judge Moore's

Administrative Order 2020-22, which continued all grand jury sessions until April

27, 2020. *Id*. at 2. The government stated that it had corresponded with Dunn's

public defender, and that the parties agreed that the ends of justice served by

continuing the arraignment outweigh the best interest of the public and the defendant

in a speedy trial. *Id*.

The following day, U.S. Magistrate Judge Dave Lee Brannon issued a

paperless order granting the Government's unopposed motion to continue

Arraignment. DE-11. The paperless order stated, "The Court finds that the time

between 4/6/2020 and 5/21/2020 is speedy trial excludable in that the ends of justice

are served by continuing the preliminary hearing/arraignment and outweigh the best

interest of the public and the defendant in a speedy trial." *Id*.

This order failed to provide the sufficient analysis and findings required by the Speedy Trial Act to properly exclude time under the Speedy Trial clock. Section 3161(h)(7)(A) of the Speedy Trial Act explicitly states that time will not be excluded unless "the court set forth, in the record of the case, either orally or in writing, **its reasons** for finding that the ends of justice served by the granting of such continuance outweigh the best interests of the public and the defendant in a speedy trial." 18 U.S.C. § 3161(h)(7)(A) (emphasis added). The order above failed to provide any reasons as to why the ends of justice served by the granting of the continuance outweigh the interests of the defendant and the public, as required by the Speedy Trial Act. Moreover, the court failed to provide any indica that it conducted a sufficient analysis weighing the statutory factors of Section 3161(h)(7)(B), as required to exclude time under the Speedy Trial Act. As the Supreme Court stated in *Zedner*, the ends-of-justice provision "demands on-the-record findings and *specified in some detail certain factors that a judge must consider* in making those findings." *Zedner,* at 509. And if the District Court fails to consider that statutory factors for granting an ends-of-justice continuance under the Speedy Trial Act, the continuance period cannot be excluded under the Act's ends-of-justice provision. *Larson*, 627 F.3d. at 1204. As the court failed to provide any reasons as to why the ends of justice were served by the continuance in this case, accompanied with the failure to consider the statutory factors, the time cannot be

excluded under the Speedy Trial Act as stated in the statute and controlling Supreme Court caselaw.

The insufficient findings and continuances persisted throughout Dunn's case. Following Dunn's preliminary hearing, on May 20, 2020, the Court issued an order finding that the "Defendant be held to answer the charges" DE-15. In that same order, U.S. Magistrate Judge Bruce E. Reinhart found that "Pursuant to Administrative Order 2020-24, the period of time from today through July 6, 2020, is excluded under the Speedy Trial Act." *Id*.

In his order, Judge Reinhart relied on Administrative Order 2020-24 to exclude time from the Speedy Trial clock. But as stated *supra*, the findings must be case-specific and "be on the record in the case". Simply relying on a general all-inclusive blanket continuance does not suffice under the Speedy Trial Act or controlling case law. Moreover, the order failed to find that the ends of justice served by the granting of the continuance outweighs the best interests of the defendant and the public in a speedy trial, as explicitly required by the Speedy Trial Act. Further, the order fails to provide any reasons as to why the continuance was granted, nor does it provide any indicia that it properly considered the statutory factors of the Speedy Trial Act, both of which are required to properly exclude time from the Speedy Trial clock. As such, this order was clearly erroneous as it failed to provide

any findings required by the Speedy Trial Act and the time cannot be excluded from Speedy Trial calculations.

A status conference for Dunn's arraignment was held on July 6, 2020. Following the status conference, U.S. Magistrate Judge William Matthewman reset Dunn's arraignment for October 21, 2020. DE-16. The order stated that the "Court found the time between 7/6/2020 and 10/21/2020 excludable and that the ends of justice served by granting this continuance outweigh the interests of the defendant and the public in a speedy trial for the reasons as stated on the record." *Id.* Here, similar to the previous orders, the Court failed to provide its reasons for finding that the ends of justice were served by granting this continuance, as required under the Speedy Trial Act. The order also failed to provide any indicia that it considered all the statutory factors a court must consider in making its findings to properly exclude time under the Speedy Trial Act.

The Court continued the arraignment one more time in this case. On October 20, 2020, an unopposed motion to continue arraignment was filed by Dunn, requesting the arraignment be continued 90 days as grand jury sessions had still not reconvened and no indictment had been returned. DE-19. That same day, U.S. Magistrate Judge Bruce E. Reinhart issued a paperless order granting the motion and continuing the arraignment to January 1, 2021. DE-20. The paperless order found that "the time period between October 20, 2020 through January 20, 2021 is

excludable from the speedy trial calculations, because the ends of justice served by this delay outweigh the interests of the defendant and the public in a speedy trial." *Id*.

As a prefatory matter, it is not dispositive that Dunn filed the motion to continue the arraignment instead of the government or the Court ordering it *sua sponte*. As this Circuit has held, a defendant cannot waive the Speedy Trial Act's timeliness requirements; the district court bears the burden of making ends-of-justice findings and placing them on the record irrespective of the defendant's agreement to a delay. *United States v. Ammar*, 842 F.3d. 1203 (11th Cir. 2016). A defendants agreement to waive the protections of the Speedy Trial Act cannot, by itself, justify an ends-of-continuance because the public interest in a speedy trial is also protected by the act. *Id*. As the Honorable Judge Roy Altman stated in his order denying the Motion to Dismiss, "Of course, none of this really matters because, as *Zedner* explained, "a defendant may not prospectively waive the application of the Act." 547 U.S. at 503." DE-78 at 17.

Moving forward to the analysis of the findings within this order, similar to the previous orders, this paperless order lacked the sufficient findings and analysis to properly exclude time under the Speedy Trial Act. The order issued on October 20, 2020, again failed to provide its reasons as to why the ends of justice served by the continuance outweigh the interests of the defendant and the public, as required under

42

the Speedy Trial Act. Moreover, similar to the previous orders, it failed to provide any indicia that the court conducted a proper analysis and considered the statutory factors under the act, as required by both the Speedy Trial Act and *Zedner*.

In sum, each of the Magistrate Judge's orders in this case lacked the necessary analysis and findings to properly exclude time under the Speedy Trial Act. The orders failed to provide the reasons as the why the ends of justice were served by the continuance, as required by the Speedy Trial Act. Furthermore, the orders failed to provide any indicia that the court engaged in a proper consideration of the statutory factors in determining whether to grant the continuance, as required by both the Speedy Trial Act and controlling Supreme Court case law. Since the orders failed to contain the required analysis and findings to exclude time, the time of delay from each of those continuances cannot be excluded under the Speedy Trial clock. Across all the improper continuances in this case, including the continuance discussed in the first section of this argument, a total of 283 days were improperly excluded from the Speedy Trial calculations. In addition to the 283 days that were improperly excluded, six days had passed from his arrest and were attributed to the Speedy Trial clock. Thus, a total of 289 days had passed under the Speedy Trial clock before Dunn was Indicted, vastly exceeding the thirty (30) day statutory requirement under the Speedy Trial Act. As the time from the arrest to the Indictment vastly exceeds the

thirty (30) day requirement, the Indictment must be dismissed. *Mathurian*, 690 F.3d at 1242.

### c. The Speedy Trial Act Violation Warrants Dismissal With Prejudice

If the thirty-day time limit is not met, the Act entitles the defendant to the dismissal of the charges contained in the complaint. *United States v. Mathurin*, 690 F.3d 1236 (11th Cir. 2012). The Speedy Trial Act sets forth three factors for a court to consider in deciding whether a dismissal should be with or without prejudice: (1) the seriousness of the offense; (2) the facts and circumstances leading to the dismissal; and (3) the impact of a re-prosecution and the administration of the Speedy Trial Act and the administration of justice. *See* 18 U.S.C. § 3162(a)(2). The defendant has the burden of proof in supporting a motion to dismiss but the Government has the burden of coming forward with evidence in connection with any exclusion of time. *Id*. § 3162(a)(1). Length of delay can sometimes be enough by itself, to justify the dismissal with prejudice because of failure to indict a defendant within 30 days. *United States v. Godoy*, 821 F.2d 1498 (11th Cir. 1987). In order to prevent abuse of the Speedy Trial Act's deadlines, we require a showing of "some affirmative justification" by the government to warrant a dismissal without prejudice. *Id*. at 1505. A delay becomes presumptively prejudicial as it approaches one year. *United States v. Knight*, 562 F.3d 1314 (11th Cir. 2009).

In this case, Dunn was charged with crimes that carry a potential of a significant sentence. Pursuant to the outcome of this appeal, Dunn plead guilty and was sentenced to a total of 600 months. Admittedly, the first factor concerning the seriousness of the offense favors the government.

The second factor and third factor, the facts and circumstances leading to the dismissal and the impact or re-prosecution, weighs heavily against the Government. When analyzing this factor, it is important to note that the Supreme Court in *Barker v. Wingo*, recognized that:

> "the societal disadvantages of lengthy pretrial incarceration, but obviously the disadvantages for the accused who cannot obtain his release are even more serious. The time spent in jail awaiting trial has a detrimental impact on the individual. It often means loss of a job; it disrupts family life; and it enforces idleness. Most jails offer little or no recreational or rehabilitative programs. The time spent in jail is simply dead time. Moreover, if a defendant is locked up, he is hindered in his ability to gather evidence, contact witnesses, or otherwise prepare his defense. Imposing those consequences on anyone who has not yet been convicted is serious. It is especially unfortunate to impose them on those persons who are ultimately found to be innocent. Finally, even if an accused is not incarcerated prior to trial, he is still disadvantaged by restraints on his liberty and by living under a cloud of anxiety, suspicion, and often hostility."
> *Barker v. Wingo*, 407 U.S. 514, 92 S. Ct. 2182, 33 L. Ed. 2d 101 (1972).

Indeed, the nearly two years spent incarcerated awaiting his chance to try to prove his innocence has been detrimental to Dunn in various ways. First, because of the constant lock-down status at the Palm Beach County and Broward County main jails, Dunn has had recreation time only five times in the two years awaiting trial.

45

Three of those times, however, were only because of a "shakedown of the dorm." During this two year time-period, the Covid-19 virus had infected a number of fellow inmates, putting him at risk every time. Because of the inadequate recreation, accompanied with the poor nutritional diet provided, Dunn contracted Type II diabetes. Until he managed to get the Doctor to change his medication, he would suffer terrible bruising as a result of the constant insulin shots. Even now, he is experiencing a problem with the dosage amount of his glipizide, which acts as insulin and is given orally. Without it, he suffered from hyperglycemia; high blood glucose levels, and a diabetic coma. With it, as he takes it daily, he faces hypoglycemia, low blood glucose levels, and if his glucose gets too low he faces a diabetic coma again, as most days he endures constant shaking, dizziness, and clamminess from blood-glucose levels being too low, a symptom of hypoglycemia.

Moreover, at the time he was preparing and writing his Reply to the Government's Response, he contracted "scabies", a microscopic mite that infests below the skin and causes extreme discomfort and profuse itching, which took 3 treatments to get rid of once he convinced the medical staff that it was what he was suffering from. He also endured several slip-and-falls at the Paul Rein Facility, due to only "shower slides" to wear which do not prevent slippage on the sleek tiled floors; his left knee was bruised and swollen for weeks due to multiple falls. He also endured intense pain for eight weeks due to a tooth that broke, exposing the nerve.

He was unable to sleep or eat and was unable to get more than two Tylenol twice daily for the pain, and even then, it took three grievances and much pleading with the medical staff to get treatment.

Furthermore, just days after Dunn's arrest, his brother-in-law and his only witness, passed away due to leukemia. His brother in law knew of the pictures, knew he was being scammed and even black-mailed just days prior to his arrest. As the Supreme Court recognized in *Barker v. Wingo*, "if witnesses die or disappear during a delay, the prejudice is obvious." *Wingo*, 407 U.S. 514, 92 S. Ct. 2182, 33 L. Ed. 2d at 532. As such, the prejudice to Dunn is obvious.

Lastly, when looking at the timeline of the continuances and the Court's approach to handling the Covid-19 pandemic, the analysis weighs in favor of Dunn. As of October, all but a few of the 94 U.S. district courts had returned to the use of grand juries. *Grand juries carry on during pandemic*, United States Courts, https://www.uscourts.gov/news/2020/10/27/grand-juries-carry-during-pandemic (last visited Aug 3, 2022).The Southern District of Florida was one of the few districts  in the United States that had not reconvened grand juries sessions by October and the Southern District of Florida would continue to not hold grand juries sessions for another two months, despite nearly every other district in the United States having safely conducted grand jury sessions. In districts with significant caseloads and high infections rates such as the New Mexico District Court and the

Southern District of New York, grand juries began reconvening safely as early as May and June. *Id*. at 1-2. As the Honorable New York Southern District Chief Judge Collen McMahon stated, "You can quickly run into constitutional problems. Our philosophy is, we can try and fail, but we can't not try. Then we at least have an argument to make when someone raises constitutional and speedy trial issues." *Id*. at 4. The same cannot be said for the Southern District of Florida. The District was one of the last, if not the last, districts to attempt to resume grand jury proceedings. As shown by nearly every other district court in the United States, reconvening grand juries in a safe and efficient manner was not impossible, the district just failed to try, to the detriment of the defendants within the district, and specifically, Robert Dunn.

## CONCLUSION

For the foregoing reasons, Robert Dunn respectfully requests this Court to dismiss the Indictment with prejudice.

## CERTIFICATE OF TYPE STYLE AND VOLUME

I HEREBY CERTIFY that the brief complies with the type-style volume limitation and contains 12,265 words.

s/Edward J. O'Donnell, IV

## CERTIFICATE OF COMPLIANCE WITH ELECTRONIC FILING

I HEREBY CERTIFY that the brief has been, or shortly will be, provided to the Court in electronic format as described in 11th Cir. R. 31-5.

48

s/Edward J. O'Donnell IV

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a true and correct copy of the foregoing was filed

and served using the CM/ECF system on this 5th of August, 2022.

Respectfully submitted,

s/Edward J. O'Donnell, IV

Edward J. O'Donnell, IV
8101 Biscayne Blvd.
Suite 311
Miami, FL 33138
Florida Bar #111661
(305) 573 -1000
(305) 573-9304 facsimile
info@odonnellfirm.com
eod@odonnellfirm.com